[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 01, 2004
THOMAS K. KAHN
CLERK

No. 04-13248

IN RE:

ROBERT KARL HICKS,

Petitioner.

--------------------------
Application for Leave to File a Second or Successive
Habeas Corpus Petition, 28 U.S.C. § 2244(b)
--------------------------

Before EDMONDSON, Chief Judge, BIRCH and DUBINA, Circuit Judges.

B Y   T H E   COURT:

Robert Karl Hicks is a Georgia death row inmate. We previously affirmed the

denial of his first petition seeking 28 U.S.C. § 2254 habeas corpus relief. *See Hicks*

*v. Head*, 333 F.3d 1280 (11th Cir. 2003), *cert. denied*, ___ S. Ct. ___, No. 03-9864

(U.S. June 14, 2004). The trial court scheduled Hicks's execution for June 30, 2004, but on the day of the scheduled execution, the Supreme Court of Georgia granted Hicks a temporary stay until July 1, 2004, at 3:00 p.m. On July 1, Hicks filed a Motion for Authorization to file a Successive Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2244(b), and a Stay of Execution.

A. *Successive Petition for a Writ of Habeas Corpus*

Section 2244(b) directs Courts of Appeal to authorize the filing of a second habeas corpus application only if the application makes a prima facie showing that one of two specific requirements have been satisfied. Section 2244(b) provides that:

> (1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless –

>> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

>> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

>> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to

2

> establish by clear and convincing evidence that, but for
> constitutional error, no reasonable factfinder would have
> found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(1) & (2).

Hicks now asserts a claim pursuant to *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002), alleging that he is mentally retarded, and that under *Atkins*, the Eighth Amendment to the U.S. Constitution forbids his execution. Hicks relies on our decision in *In re Holladay*, 331 F.3d 1169 (11th Cir. 2003), to support his claim. The petitioner in *Holladay* filed an "eleventh hour application for leave to file a second federal habeas corpus petition" based on *Atkins*. *Id.* at 1171. In considering whether the petitioner met the requirements enunciated in 28 U.S.C. § 2244(b)(2), we held that there was

> no question that the rule recently announced by the Supreme Court in
> *Atkins* – that the execution of mental retarded persons constitutes "cruel
> and unusual punishment" in violation of the Eighth Amendment – is a
> new rule of constitutional law made retroactive to cases on collateral
> review by the Supreme Court that was previously unavailable.

331 F.3d at 1172 (citation omitted).

Although the petitioner in *Holladay* met the requirement of 28 U.S.C. § 2244(b)(2)(A), we noted that our analysis did not end there. "[I]n order to make a *prima facie* showing that he is entitled to file a second or successive petition based

on [the] Supreme Court's decision in *Atkins*, [Hicks] also must demonstrate that there is a reasonable likelihood that he is in fact mentally retarded." *Id.* at 1173. Adopting the requisite showing articulated by the Seventh Circuit in *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997), we held that "if petitioner's proofs, when measured against the entire record in this case, establish a reasonable likelihood that he is in fact mentally retarded, then we are required to grant him leave to file a second or successive habeas petition on the basis of *Atkins*." *Id.* at 1174.

We then considered the evidence regarding petitioner's capacity and found the evidence to be "conflicting." *Id.* The petitioner had taken numerous I.Q. tests, with results ranging from 49 to 73. The petitioner presented evidence from his early school years that indicated that he was a slow learner and a Department of Human Resources report that denoted him as "barely educable with a Wechsler IQ of 54." *Id.* at 1175. Moreover, the trial court instructed the jury at petitioner's sentencing that it could consider petitioner's mental retardation as a mitigating circumstance. *Id.* The trial court even noted in its judgment that it found the petitioner "slightly mentally retarded." Considering the evidence of petitioner's intellectual capacity in its totality, we concluded that a reasonable likelihood that petitioner was mentally retarded existed. *Id.* at 1176.

The present case is distinguishable from *Holladay*. First, in *Holladay*, the

4

petitioner's claim of mental retardation had not been adjudicated by any court. *See id.* Here, Hicks raised a claim of mental retardation in the state and federal courts. In his second state habeas corpus petition in 1991, Hicks raised a claim that the imposition of the death penalty would constitute cruel and unusual punishment due to alleged mental retardation.[1] The state habeas court conducted a hearing on Hicks's petition. The sole I.Q. test score Hicks offered in an attempt to establish a prima facie case of mental retardation was his pre-trial I.Q. score of 94. In dismissing Hicks's state habeas petition, the trial court found that Hicks failed to meet his burden of proof on his mental retardation claim.

Further, Hicks raised a mental retardation claim in his second federal habeas petition. The federal district court denied him relief on this claim. Hicks filed a notice of appeal to this court, and we granted a Certificate of Appealability ("COA") solely on Hicks's *Ake v. Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985), claim. We denied Hicks relief on his *Ake* claim, and the United States Supreme Court denied *certiorari* on June 14, 2004.

On June 26, 2004, two days before his scheduled execution, Hicks filed his third state habeas petition again raising a claim that he is mentally retarded. In

---

[1] Hicks based his claim on *Fleming v. Zant*, 386 S.E. 2d 339 (Ga. 1989), in which the Georgia Supreme Court held that the execution of the mentally retarded would violate Georgia's constitution.

denying Hicks relief, the trial court found that Hicks was seeking to relitigate his mental retardation claim which the trial court had rejected on the merits. The trial court noted that although Hicks based his claim on the Supreme Court's *Atkins* decision, Georgia enacted its mental retardation statute prior to *Atkins* and it remained unchanged post-*Atkins*. The trial court found that allowing Hicks ro raise this claim again in this habeas corpus action would be allowing him a second chance to meet the standard of proof for establishing mental retardation under O.C.G.A. § 17-7-131, which the trial court previously found [Hicks] had not proven in his second habeas proceeding. The trial court further noted that this is the type of relitigation prohibited by Georgia's successive petition bar. *See* O.C.G.A. § 9-14-51.

Second, Hicks's application does not demonstrate "a prima facie showing that the application satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3)(C). Unlike *Holladay*, Hicks cannot demonstrate that a reasonable likelihood that he is in fact mentally retarded exists. *Holladay*, 331 F.3d at 1174. At the state habeas hearing on his second habeas petition, Hicks presented evidence of an I.Q. score of 94, which is well above the guideline used to describe mental retardation. *See Atkins*, 536 U.S. at 308 n.3, 122 S. Ct. at 2245 n.3. Hicks also presented evidence that an independent psychiatrist evaluated him prior to trial and found him to be in the low range of average intelligence, but not mentally retarded.

6

Furthermore, as part of his first state habeas corpus proceedings, a neurologist evaluated Hicks. The neurologist did not determine that Hicks was mentally retarded and noted that Hicks had obtained his GED and one year of college credit since his incarceration.

As such, the present case is different from *Holladay*. When reviewing the evidence of Hicks's intellectual capacity in its totality, we are not compelled to say that "a reasonable likelihood" exists that Hicks is mentally retarded. Accordingly, we deny Hicks's Motion for Leave to file a Successive Habeas Corpus Petition.

B. *Motion for a Stay*

We will "consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief." *Gomez v. United States Dist. Court of N. Dist. Of Cal.*, 503 U.S. 653, 654, 112 S. Ct. 1652, 118 L. Ed. 2d 293 (1992). We must consider "the extent to which [Hicks] has delayed unnecessarily in bringing the claim . . . [because] there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Nelson v. Campbell*, 124 S. Ct. 2117, 2126 (2004). The Court noted that a stay is an equitable remedy, and "[e]quity must take into consideration the State's strong interest in proceeding with its judgment and . . . attempt[s] at manipulation." *Id.* (quoting *Gomez*, 503 U.S. at 654, 112 S. Ct. 1652).

Furthermore, the Court stated that "there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Id.*

We have determined that there is not a reasonable likelihood that Hicks is mentally retarded and, we noted that Hicks had prior knowledge of a claim of mental retardation. Hicks could have filed a motion with this court soon after the Supreme Court's pronouncement in *Atkins*, but he did not do so. Because there is a "strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay," we will not grant Hicks a stay.[2]

APPLICATION DENIED; STAY OF EXECUTION DENIED.[3]

---

[2] We also deny his request for a stay pending consideration of his complaint filed in the Inter-American Commission on Human Rights. We have no jurisdiction over this Commission, nor is any finding made by this Commission binding on us. *See Garza v. Lappin*, 253 F.3d 918, 924-26 (7th Cir. 2001).

[3] Judge Birch dissents and will file an opinion forthwith.

BIRCH, Circuit Judge, dissenting:

I respectfully dissent. In my judgment the movant, Hicks, pursuant to In Re Holladay, 331 F.3d 1169, 1173 (11th Cir. 2003), has adequately demonstrated that there is a reasonable likelihood that he is in fact mentally retarded under Atkins v. Virginia, 536 U.S. 304, 122 S. Ct. 2242, 153 L.Ed. 2d 335 (2002). Clearly Hicks has made a sufficient showing of possible merit to warrant a fuller exploration by the district court. Holladay, 331 F.3d at 1173-74.

I would grant a stay of execution until the district court could hold an evidentiary hearing to make a finding as to mental retardation under Atkins. I concur with Justice Norman Fletcher of the Georgia Supreme Court in his observation that: "[a] state law procedure that allows a habeas court to deny access to an expert [psychologist] and then dismiss the petition for lack of an expert [opinion] fails to provide adequate protection for the federal constitutional right." Hicks v. Schofield, (Ga. S. Ct.; Case no. S04W1751; 1 July 2004) (dissenting).

The following representations by Hicks' counsel, an officer of this court, resonate with me:

> Georgia state habeas corpus judges routinely grant access for testing. Petitioner presented below 86 cases in which access [has] been granted. Georgia has provided no basis for distinguishing between Petitioner and the 86 other persons who have received frequently life-saving access to testing. The habeas corpus judge in 1992 in Petitioner's case simply

9

denied the motion for access the day it was filed without explanation, and now Respondent contends that that unexplained denial provides sufficient cause to deny testing post-*Atkins*. It is utterly arbitrary and violative of the Eighth and Fourteenth Amendments for Georgia to treat similarly situated persons differently.

* * * * *

The State also argued in 1992 that evidence existed that Petitioner was not retarded. The evidence relied upon by the State is faulty and could not be the basis for refusing testing. First, the State argued that Petitioner had obtained a GED and had completed the equivalent of one year of college, based upon the 1985 report of a trial defense expert. While it is true that the report recites this information, *see* Appendix 13, the information came from Petitioner's self-report and is unreliable. Second, the State argued that a defense expert named Bradford opined in 1986 that Petitioner's "intelligence was *estimated* to be in the low average range." Hearing at 27 (emphasis added) Bradford did not perform *any* IQ testing. *Estimated* IQs are notoriously inaccurate and in fact Bradford recommended that a complete IQ test be administered. . . .

While not raised by the State in 1992, Petitioner is aware of an invalid IQ score of 94 that was obtained in 1985 by Dr. Grigsby. This IQ score is invalid because it was obtained with an incomplete and outdated test. Dr Dale Watson explains:

> [I]t is my professional opinion that the IQ standard score of 94 obtained on the 'abbreviated WAIS' administered by Dr. Grigsby in 1985 is invalid as an accurate measure of Mr. Hicks' intelligence and is in all probability significantly inaccurate.
> * * * * *
> Dr. Grigsby gave an abbreviated or short form of the test, a practice that has been criticized as sometimes resulting in high levels of classification inaccuracy.
> * * * * *
> [S]tudies show that some versions of short form testing yield **significantly overestimated IQ's** when compared to actual

10

Full Scale IQ obtained from the administration of the complete test. (*Thompson*, 1985).
* * * * *

The results obtained from administering a WAIS in 1985, whether administered fully or partially, are also likely to have been artificially inflated by what has been labeled "The Flynn Effect."
* * * * *

Because only a portion of the WAIS was administered (and it is unknown which subtests or portions of subtests were utilized); because the WAIS was, at the time administered, and outdated, obsolete and invalid test for accurately determining IQ; and because the Flynn Effect would cause any score obtained on the WAIS in 1985 to be artificially inflated, itis my opinion that ***the test results obtained by Dr. Grigsby are invalid and of little use in determining Mr. Hicks IQ***.
App. 17.

In Clinical Interpretation of the WAIS (Zimmerman, Grune & Stratton, 1973), it states that "Wechsler himself presented one of the most cogent criticisms of the brief form . . . reliabilities of some subtests are so low so that reliance on half the items or only a few subtests to draw conclusions is inadvisable." (p. 178). The Handbook on Psychological Assessment is similarly clear about the unreliability of "short form" tests. *See* Gary Groth Marnat, Handbook on Psychological Assessment 191 (4th Ed.) ("None of the [Wechsler] short forms should be confused with a full intellectual assessment or even a valid indicator of IQ.").

Motion for Authorization to File a Successive Petition for Writ of Habeas Corpus

and Stay of Execution at 23, n. 11; 25-27.