BY THE COURT:
Robert Karl Hicks is a Georgia death row inmate. We previously affirmed the denial of his first petition seeking 28 U.S.C. § 2254 habeas corpus relief. See Hicks v. Head, 333 F.3d 1280 (11th Cir.2003), cert. denied, — U.S. —, 124 S.Ct. 2847, 159 L.Ed.2d 276, No. 03-9864, 2004 WL 843698 (U.S. June 14, 2004). The trial court scheduled Hicks’s execution for June 30, 2004, but on the day of the scheduled execution, the Supreme Court of Georgia granted Hicks a temporary stay until July 1, 2004, at 3:00 p.m. On July 1, Hicks filed a Motion for Authorization to file a Successive Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2244(b), and a Stay of Execution.
*1239 A. Successive Petition for a Writ of Habeas Corpus
Section 2244(b) directs Courts of Appeal to authorize the filing of a second habeas corpus application only if the applicant makes a prima facie showing that one of two specific requirements has been satisfied. Section 2244(b) provides that:
(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
28 U.S.C. § 2244(b)(1) & (2).
Hicks now asserts a claim pursuant to Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), alleging that he is mentally retarded, and that under Atkins, the Eighth Amendment to the U.S. Constitution forbids his execution. Hicks relies on our decision in In re Holladay, 331 F.3d 1169 (11th Cir.2003), to support his claim. The petitioner in Holladay filed an “eleventh hour application for leave to file a second federal habeas corpus petition” based on Atkins. Id. at 1171. In considering whether the petitioner met the requirements enunciated in 28 U.S.C. § 2244(b)(2), we held that there.was
no question that the rule recently announced by the Supreme Court in Atkins — that the execution of mentally retarded • persons constitutes “cruel and unusual punishment” in violation of the Eighth Amendment — is a new rule of constitutional law made retroactive to .cases on collateral review by the Supreme Court that was previously unavailable.
331 F.3d at 1172 (citation omitted).
Although the petitioner in Holladay met the requirement .of 28 U.S.C. § 2244(b)(2)(A), we noted that our analysis did not end there. “[I]n order to make a prima facie showing that he is entitled to file a second or successive petition based on [the] Supreme Court’s decision in Atkins, [the petitioner] also must demonstrate that there is a reasonable likelihood that he is in fact mentally retarded.” Id. at 1173. Adopting the requisite showing articulated by the Seventh Circuit in Bennett v. United States, 119 F.3d 468, 469 (7th Cir.1997), we held that “if petitioner’s proofs, when measured against the entire record in this case, establish a reasonable likelihood that he is in fact mentally retarded, then we are required to grant him leave to file a second or successive habeas petition on the basis of Atkins.” Id. at 1174.
We then considered the evidence regarding petitioner’s capacity and found the evidence to be “conflicting.” Id. The petitioner had taken numerous I.Q. tests, with results ranging from 49 to 73. The petitioner presented evidence from his early school years that indicated that he was a slow learner and a Department of Human Resources report that denoted him as “barely educable with a Wechsler IQ of 54.” Id. at 1175. Moreover, the *1240 trial court instructed the jury at petitioner’s sentencing that it could consider petitioner’s mental retardation as a mitigating circumstance. Id. The trial court even noted in its judgment that it found the petitioner “slightly mentally retarded.” Considering the evidence of petitioner’s intellectual capacity in its totality, we concluded that a reasonable likelihood that petitioner was mentally retarded existed. Id. at 1176.
The present case is distinguishable from Holladay. First, in Holladay, the petitioner’s claim of mental retardation had not been adjudicated by any court. See id. Here, Hicks raised a claim of mental retardation in the state and federal courts. In his second state habeas corpus petition in 1991, Hicks raised a claim that the imposition of the death penalty would constitute cruel and unusual punishment due to alleged mental retardation.[1] The state ha-beas court conducted a hearing on Hicks’s petition. The sole I.Q. test score Hicks offered in an attempt to establish a prima facie case of mental retardation was his pre-trial I.Q. score of 94. In dismissing Hicks’s state habeas petition, the trial court found that Hicks failed to meet his burden of proof on his mental retardation claim.
Further, Hicks raised a mental retardation claim in his second federal habeas petition. The federal district court denied him relief on this claim. Hicks filed a notice of appeal to this court, and we granted a Certificate of Appealability (“COA”) solely on Hicks’s Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), claim. We denied Hicks relief on his Ake claim, and the United States Supreme Court denied cer-tiorari on June 14, 2004.
On June 26, 2004, two days before his scheduled execution, Hicks filed his third state habeas petition again raising a claim that he is mentally retarded. In denying Hicks relief, the trial court found that Hicks was seeking to relitigate his mental retardation claim which the trial court had rejected on the merits. The trial court noted that although Hicks based his claim on the Supreme Court’s Atkins decision, Georgia enacted its mental retardation statute prior to Atkins, and it remained unchanged post-Aifcms. The trial court found that allowing Hicks to raise this claim again in this habeas corpus action would be allowing him a second chance to meet the standard of proof for establishing mental retardation under O.C.G.A. § 17-7-131, which the trial court previously found [Hicks] had not proven in his second habeas proceeding. The trial court further noted that this is the type of relitigation prohibited by Georgia’s successive petition bar. See O.C.G.A. § 9-14-51.
Second, Hicks’s application does not demonstrate “a prima facie showing that the application satisfies the requirements of this subsection.” 28 U.S.C. § 2244(b)(3)(C). Unlike Holladay, Hicks cannot demonstrate that a reasonable likelihood that he is in fact mentally retarded exists. Holladay, 331 F.3d at 1174. At the state habeas hearing on his second habeas petition, Hicks presented evidence of an I.Q. score of 94, which is well above the guideline used to describe mental retardation. See Atkins, 536 U.S. at 308 n. 3, 122 S.Ct. at 2245 n. 3. Hicks also presented evidence that an independent psychiatrist evaluated him prior to trial and found him to be in the low range of average intelligence, but not mentally retarded. Furthermore, as part of his first *1241 state habeas corpus proceedings, a neurologist evaluated Hicks. The neurologist did not determine that Hicks was mentally-retarded and noted that Hicks had obtained his GED and one year of college credit since his incarceration.
As such, the present case is different from Holladay. When reviewing the evidence of Hicks’s intellectual capacity in its totality, we are not compelled to say that “a reasonable likelihood” exists that Hicks is mentally retarded. Accordingly, we deny Hicks’s Motion for Leave to file a Successive Habeas Corpus Petition.
B. Motion for a Stay
We will “consider the last-minute nature of an application to stay execution in deciding whether to grant , equitable relief.” Gomez v. United States Dist. Court for N. Dist. of Cal., 503 U.S. 653, 654, 112 S.Ct. 1652, 118 L.Ed.2d 293 (1992). We must consider “the extent to which .[Hicks] has delayed unnecessarily in bringing the claim ... [because] there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.” Nelson v. Campbell, — U.S. —, 124 S.Ct. 2117, 2126, 158 L.Ed.2d 924 (2004). The Court noted that a stay is an equitable remedy, and “[equity must take into consideration the State’s strong interest in proceeding with its judgment and ... attempts] at manipulation.” Id. (quoting Gomez, 503 U.S. at 654, 112 S.Ct. 1652, 118 L.Ed.2d 293). Furthermore, the Court stated that “there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.” Id.
We have determined that there is not a reasonable likelihood that Hicks.is mentally retarded, and we noted that Hicks had prior knowledge of á claim of mental retardation. Hicks could'have filed a motion with this court soon after the Supreme Court’s pronouncement in Atkins, but he did no.t do so. , Because there is a “strong equitable presumption against the grant of á stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay,” we will not grant Hicks a stay.[2]
APPLICATION DENIED; STAY OF EXECUTION DENIED.

. Hicks based his claim on Fleming v. Zant, 259 Ga. 687, 386 S.E.2d 339 (1989), in which the Supreme Court of Georgia held that the execution of the mentally retarded would violate Georgia’s constitution.

. We also deny his request for a stay pending consideration of his complaint filed in the Inter-American Commission on Human Rights. We have no jurisdiction over this Commission, nor is any finding made by this Commission binding on us. See Garza v. Lappin, 253 F.3d 918, 924-26 (7th Cir.2001).