BIRCH, Circuit Judge,
dissenting:
I respectfully dissent. In my judgment the movant, Hicks, pursuant to In Re Holladay, 331 F.3d 1169, 1173 (11th Cir.2003), has adequately demonstrated that there is a reasonable likelihood that he is in fact mentally retarded under Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Clearly Hicks has made a sufficient showing of possible merit to warrant a fuller exploration by the district court. Holladay, 331 F.3d at 1173-74.
I would grant a stay of execution until the district court could hold an evidentiary hearing to make a finding as to mental retardation under Atkins. I concur with Justice Norman Fletcher of the Georgia Supreme C°urt in his observation that: “[a] state law procedure that allows a ha-beas court to deny access to an, expert [psychologist] and then dismiss the peti *1242 tion for lack of an expert [opinion] fails to provide adequate protection for the federal constitutional right.” Hicks v. Schofield, (Ga. S.Ct.; Case no. S04W1751; 1 July 2004) (dissenting).
The following representations by Hicks’ counsel, an officer of this court, resonate with me:
Georgia state habeas corpus judges routinely grant access for testing. Petitioner presented below 86 cases in which access [has] been granted. Georgia has provided no basis for distinguishing between Petitioner and the 86 other persons who have received frequently lifesaving access to testing. The habeas corpus judge in 1992 in Petitioner’s case simply denied the motion for access the day it was filed without explanation, and now Respondent contends that that unexplained denial provides sufficient cause to deny testing post-Atkins. It is utterly arbitrary and violative of the Eighth and Fourteenth Amendments for Georgia to treat similarly situated persons differently.
* * * sfi Si«
The State also argued in 1992 that evidence existed that Petitioner was not retarded. The evidence relied upon by the State is faulty and could not be the basis for refusing testing. First, the State argued that Petitioner had obtained a GED and had completed the equivalent of one year of college, based upon the 1985 report of a trial defense expert. While it is true that the report recites this information, see Appendix 13, the information came from Petitioner’s self-report and is unreliable. Second, the State argued that a defense expert named Bradford opined in 1986 that Petitioner’s “intelligence was estimated to be in the low average range.” Hearing at 27 (emphasis added). Bradford did not perform any IQ testing. Estimated IQs are notoriously inaccurate and in fact Bradford recommended that a complete IQ test be administered ....
While not raised by the State in 1992, Petitioner is aware of an invalid IQ score of 94 that was obtained in 1985 by Dr. Grigsby. This IQ score is invalid because it was obtained with an incomplete and outdated test. Dr. Dale Watson explains:
[I]t is my professional opinion that the IQ standard score of 94 obtained on the “abbreviated WAIS” administered by Dr. Grigsby in 1985 is invalid as an accurate measure of Mr. Hicks’ intelligence and is in all probability significantly inaccurate.
}J« ifc & $
Dr. Grigsby gave an abbreviated or short form of the test, a practice that has been criticized as sometimes resulting in high levels of classification inaccuracy.
[S]tudies show that some versions of short form testing yield significantly overestimated IQ’s when compared to actual Full Scale IQ obtained from the administration of the complete test. (Thompson, 1985).
*****
The results obtained from administering a WAIS in 1985, whether administered fully or partially, are also likely to have been artificially inflated by what has been labeled “The Flynn Effect.”
;Ji j}j >{« í}í
Because only a portion of the WAIS was administered (and it is unknown which subtests or portions of subtests were utilized); because the WAIS was, at the time administered, an outdated, obsolete and invalid test for accurately determining IQ; and be *1243 cause the Flynn Effect would cause any score obtained on the WAIS in 1985 to be artificially inflated, it is my opinion that the test results obtained by Dr. Grigsby are invalid and of little use in determining Mr. Hicks IQ.
App. 17.
In Clinical Interpretation of the WAIS (Zimmerman, Gruñe & Stratton, 1973), it states that ‘Wechsler himself presented one of the most cogent criticisms of the brief form ... reliabilities of some subtests are so low so that reliance on half the items or only a few subtests to draw conclusions is inadvisable.” (p. 178). The Handbook on Psychological Assessment is similarly clear about the unreliability of “short form” tests. See Gary Groth Marnat, Handbook on Psychological Assessment 191 (4th Ed.) (“None of the [Wechsler] short forms should be confused with a full intellectual assessment or even a valid indicator of IQ”).
Motion for Authorization to File a Successive Petition for Writ of Habeas Corpus and Stay of Execution at 23, n. 11; 25-27.