**[DO NOT PUBLISH]**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE ELEVENTH CIRCUIT**
_____

**No. 05-13060**
**Non-Argument Calendar**
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 12, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 01-03225-CV-RRA-S

TIMOTHY LEE JEMISON,

Petitioner-Appellant,

versus

JOHN NAGLE,
Warden,
ATTORNEY GENERAL OF ALABAMA,

Respondents-Appellees.

_____

**Appeal from the United States District Court**
**for the Northern District of Alabama**
_____

**(December 12, 2005)**

Before DUBINA, HULL and MARCUS, Circuit Judges.

**PER CURIAM:**

Timothy Lee Jemison, a <u>pro</u> <u>se</u> Alabama prisoner currently serving

consecutive life and twenty-year terms of imprisonment for his 1996 convictions

for first-degree rape and first-degree theft of property, appeals the district court's dismissal of his second or successive habeas corpus petition filed pursuant to 28 U.S.C. § 2254. Jemison contends that newly discovered exculpatory DNA test results were suppressed by the prosecution during his 1996 trial, in violation of Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963). The district court dismissed Jemison's petition as untimely under 28 U.S.C. § 2244(d), based on the court's findings that Jemison first knew the facts underlying his claim no later than September 1997, and that Jemison could not demonstrate his actual innocence in order to avoid the procedural bar. After thorough review of the record and careful consideration of the parties' briefs, we affirm.

We granted Jemison's motion for a certificate of appealability ("COA") on the following two issues: (1) whether the district court erred by concluding that his habeas corpus petition was untimely in light of this Court's conclusion in a prior proceeding that Jemison could not have discovered the factual predicate of his claim until March 2001; and (2) if not, whether the district court abused its discretion by failing to conduct an evidentiary hearing on Jemison's actual innocence claim based on newly discovered evidence.

Jemison filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat.

1214 (1996), and, therefore, the provisions of that act govern this appeal. The

AEDPA provides the following:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
> ...
> (D) the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). We review <u>de</u> <u>novo</u> a district court's determination that a petition for federal habeas corpus relief is time-barred under 28 U.S.C. § 2244(d). <u>Ford v. Moore</u>, 296 F.3d 1035, 1037 (11th Cir. 2002). We review a district court's factual findings in a habeas corpus proceeding for clear error. <u>Dorsey v. Chapman</u>, 262 F.3d 1181, 1185 (11th Cir. 2001). A district court's determination regarding a party's diligence is a finding of fact that we review for clear error. <u>Drew v. Moore</u>, 297 F.3d 1278, 1283 (11th Cir. 2002). Under clear error review, where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. <u>Johansen v. Combustion Eng'g</u>, 170 F.3d 1320, 1335 n.30 (11th Cir. 1999). Finally, we review a district court's decision to grant or deny an evidentiary hearing in a habeas proceeding for abuse of discretion. <u>See</u> <u>McNair v. Campbell</u>, 416 F.3d 1291, 1297 (11th Cir. 2005)

The relevant facts are straightforward.  In the instant § 2254 petition, filed on December 13, 2001, Jemison challenges his 1996 convictions on the basis of newly discovered evidence in the form of DNA test results that Jemison contends would prove that he did not commit the crimes for which he was convicted.  The state answered Jemison's petition, arguing that Jemison had presented the same claim as early as September 1997 in a collateral appeal in Alabama state court, and, thus, Jemison's petition was time-barred.

In support of its position, the state filed records of Jemison's criminal trial, his state-court collateral challenges, and his prior federal habeas corpus petitions. A review of these materials reveals the following.  Jemison's final judgment of conviction issued on March 18, 1997, after his conviction was affirmed on direct appeal by the Alabama Court of Criminal Appeals and the Alabama Supreme Court denied his petition for writ of certiorari.  Thereafter, in September 1997, Jemison filed an application for state post-conviction relief, pursuant to Ala. R. Crim. P. 32, arguing, among other things, that the prosecution had withheld exculpatory DNA evidence in his case, in violation of Brady.  The Alabama Court of Criminal Appeals held that Jemison's Brady claim was procedurally barred because it could have been, but was not, raised at trial or on direct appeal.  In 1999, Jemison filed his initial § 2254 petition in federal court, in which he again raised

his Brady claim. The district court dismissed the petition, finding that his claims were procedurally barred from review because the state court had clearly and expressly held that they were procedurally barred under state law.

In 2001, Jemison then petitioned this Court for leave to file the instant second or successive § 2254 petition, in which he claims he recently located DNA evidence establishing that he is actually innocent of the crimes for which he was convicted. He also says that this newly discovered evidence previously had been misplaced and suppressed by the prosecution. We granted him leave to proceeed, pursuant to 28 U.S.C. § 2244(b)(2)(B), concluding that his assertions, if true, showed that Jemison could not have previously discovered the factual predicate of his claim through due diligence, and the facts underlying his claim were sufficient to establish that he would not have been found guilty if not for the prosecution's constitutional error of withholding evidence in violation of Brady. See In re Jemison, No. 01-15784 (11th Cir. Nov. 13, 2001) (Exh. vol. 2-T).

After the state filed its answer to Jemison's successive petition, Jemison requested an evidentiary hearing to consider whether the DNA evidence supporting his claim could not previously have been discovered through due diligence and an evidentiary hearing at which to establish his actual innocence based on the DNA evidence. Jemison submitted his own affidavit and the affidavit of a friend, Linda

5

Wilson, who stated that she obtained a copy of a DNA report in Jemison's case that had previously been misplaced from the District Attorney's office in Jefferson County, Alabama, in March 2001. In his affidavit, Jemison said that he had been unable to obtain the DNA report previously because it was withheld by the prosecution and that he was withholding the report until his evidentiary hearing because he was afraid to make copies of it. In a later affidavit, Jemison stated that he had mailed the DNA report to his friend Walter Finley so that Finley could make photocopies of it, and Finley had mailed the copies back to him, but prison officials refused to give the copies to Jemison because Finley had not put a return address on the package. Jemison attached a copy of a form he had submitted protesting that a piece of mail addressed to him had been withheld because it did not have a return address on it. Jemison also provided the district court with a printout from his correctional facility indicating that his DNA was tested on April 11, 1996.

The district court entered a discovery order and the state filed a motion for production of the alleged DNA report. The state also submitted an affidavit from the prosecutor in Jemison's case, stating that the alleged DNA report Jemison referred to in the current petition did not exist, that the last DNA report in

Jemison's case was completed in 1995, and that DNA analysis could not be completed on the physical evidence collected from the crime scene.

The district court then directed Jemison to submit several specific pieces of evidence, including the date of the allegedly suppressed DNA report, the name of the examiner who prepared the report, the results of the report, and current contact information for Wilson and Finley. The court also ordered the state to submit affidavits from prison authorities concerning the alleged DNA reports and any mail for Jemison that had been withheld or rejected. In response, the state submitted an affidavit from Warden Price stating that a piece of mail addressed to Jemison had been rejected in July 2003 because it did not have a return address, Jemison's protest of the rejection was denied, and the mail was destroyed, unopened, in October 2003 because Jemison failed to have the mail returned to sender at his own expense. Jemison responded to the court's order, stating that he believed the date of the DNA report was in December 1994 or January 1995, he believed it was prepared by an examiner named Larry Huys, and it exonerated him by concluding that Jemison could not have been the source of the semen found at the crime scene. Jemison stated that he was no longer in contact with Wilson and Finley, but he supplied their last known addresses.

A magistrate judge entered a Report and Recommendation ("R&R") recommending that Jemison's petition be dismissed as untimely because Jemison had known of the facts underlying his claim no later than September 1997 when he asserted the claim in his post-conviction challenge, pursuant to Ala. R. Crim. P. 32, in state court, and Jemison's failure to obtain the alleged DNA report earlier was unjustified. The magistrate judge found that Jemison had "failed to provide the court with as much as a shred of reliable evidence that would point toward his innocence of rape and/or theft." Accordingly, the magistrate judge also did not recommend that Jemison be granted an evidentiary hearing on his actual innocence claim. The magistrate judge concluded that Jemison was unable to avoid the application of the statute of limitations to his petition.

Over Jemison's objections, the district court adopted and approved the magistrate judge's R&R and dismissed Jemison's petition. Jemison filed a notice of appeal and requested a COA on several issues. We granted Jemison a COA on the two issues presented here on appeal.

We will grant an application for leave to file a second or successive petition for writ of habeas corpus when the application makes "a sufficient showing of possible merit to warrant a fuller exploration by the district court." In re Holladay, 331 F.3d 1169, 1173 (11th Cir. 2003). Here, the district court did not clearly err by

8

finding that Jemison had full knowledge of the factual predicate of his claim in 1997, even in light of the observations -- concerning whether Jemison could have discovered his claim prior to March 2001 -- in our November 13, 2001 order granting Jemison leave to file a second or successive habeas petition. In granting Jemison's application, we assumed as true Jemison's assertions that the prosecutor in his trial suppressed DNA evidence that would have exonerated him, and Jemison first discovered that evidence in 2001. In light of those conclusions, we authorized Jemison to raise his Brady claim and his claim of actual innocence in a second or successive habeas petition, understanding that those claims would be based on the newly discovered evidence that Jemison described in the application he filed with us, seeking leave to file a successive petition.

After we granted leave to proceed, the district court considered the parties' submissions, directed the parties to file certain additional evidence that the court would find helpful in deciding Jemison's petition, and concluded that Jemison's petition was time-barred. The district court found that Jemison knew of the facts supporting his Brady claim in 1997 because he raised the issue in his 1997 state post-conviction challenge Alabama state court. The district court did not clearly err by choosing the permissible view that Jemison knew of the facts supporting his claim in 1997 and was not diligent in obtaining the DNA report. The district court

was entitled to reject Jemison's version of the timeline, which he supported with his only own affidavit, in which he summarily stated that he could not obtain the DNA report previously because the prosecution suppressed it, and Wilson's affidavit, in which she said she obtained the DNA report for Jemison in March 2001. He did not provide more detailed information about the DNA test results, which he claimed to have had in his possession, despite that the district court gave him an opportunity to provide such details.

As for the second issue enumerated in the COA, we are not persuaded by Jemison's argument that the district court abused its discretion by failing to conduct an evidentiary hearing to determine whether he was actually innocent and therefore could avoid the procedural bar against his Brady claim. A claim of constitutional error in a petition for writ of habeas corpus that is procedurally barred may be considered on the merits if the petitioner establishes that a "miscarriage of justice" will result if the constitutional claim is not considered. Schlup v. Delo, 513 U.S. 298, 314-15, 115 S. Ct. 851, 860-61, 130 L. Ed. 2d 808 (1995). A petitioner's claim of actual innocence may establish a miscarriage of justice and have his otherwise procedurally barred claim considered on the merits. Id. "[T]he factual issue of whether the petitioner can make a showing of actual innocence should be first addressed" by the district court, before it addresses the

merits of the constitutional error the petitioner claims. Wyzykowski v. Dept. of Corr., 226 F.3d 1213, 1219 (11th Cir. 2000).

It is the petitioner's burden to demonstrate a likelihood that an evidentiary hearing will produce the sort of reliable evidence demanded by Schlup. Id. at 1206-07. In order to meet the actual innocence exception under Schlup, a petitioner must establish that the alleged constitutional error "probably" resulted in the conviction of one who was actually innocent. Schlup, 513 U.S. at 322, 115 S. Ct. at 864. The petitioner must support his allegations of constitutional error with new reliable evidence, such as exculpatory scientific evidence, that was not presented at trial. Id. at 324, 115 S. Ct. at 865. In light of the new evidence presented, the district court then must make a probability determination about whether reasonable, properly instructed jurors would have a reasonable doubt as to the petitioner's guilt. Id. at 328-29, 115 S. Ct. at 868. When a district court applies this standard to a request for an evidentiary hearing, it must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial. Id. at 331-32, 115 S. Ct. at 869.

Here, the district court, applying the Schlup standard, did not abuse its discretion by failing to conduct an evidentiary hearing on Jemison's actual innocence claim based on its finding that Jemison had not provided any reliable

11

evidence to support his claim of actual innocence. Jemison could not produce the alleged exculpatory DNA report, or its specific results. Jemison's actual innocence claim relied on affidavits stating that the report existed, but none of these affidavits described the contents of the report in any detail and Jemison did not provide current contact information for the affiants other than himself. While Jemison provided a printout from his correctional facility indicating that he underwent DNA testing in 1996, the test was done for unspecified purposes and there was nothing submitted indicating that a DNA report was subsequently completed. Simply put, the district court did not abuse its discretion by finding that none of Jemison's evidence was reliable enough to generate a reasonable doubt as to his guilt. Thus, on this record, an evidentiary hearing was not warranted.

**AFFIRMED.**